T.C. Memo. 1996-317

UNITED STATES TAX COURT

SIMPSON FINANCIAL SERVICES, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

RICHARD H. AND CHRISTINE R. SIMPSON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 4255-95, 4354-95.        Filed July 15, 1996.

<u>Robert D. Winston, Jr.</u>, for petitioners.

<u>Emile L. Hebert III</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Petitioners moved the Court on March 13, 1996, to recover $19,126 of administrative and litigation costs under section 7430 and Rule 231.  Petitioners petitioned the Court to redetermine respondent's determination for their 1988 taxable

year.  On December 20, 1994, respondent had issued petitioners separate notices of deficiency reflecting her determination that they were liable for the following deficiencies in Federal income tax and additions thereto:

Simpson Financial Services, Inc., docket No. 4255-95

|  |  | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6661 |
| 1988 | $28,225 | $7,056 | $1,411 | $7,056 |

Richard H. and Christine R. Simpson, docket No. 4354-95

|  |  | Additions to Tax | | |
|  |  | Sec. | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6653(a)(1) | 6661 |
| 1988 | $13,083 | $3,271 | $778 | $3,271 |

Prior to trial, the parties settled all issues raised in respondent's notices of deficiency.  In their settlement agreement, the parties agreed that there remained a deficiency for Simpson Financial Services, Inc., for its 1988 taxable year in the amount of $1,579, and a $395 addition thereto under section 6651(a)(1).  Respondent conceded all adjustments with respect to Richard H. and Christine R. Simpson.

Following this agreement and concession, we must decide whether respondent's position was substantially justified in fact and law for purposes of section 7430(c)(4)(A)(i).[1]  We conclude

[1] Respondent filed her answers on Apr. 20, 1995, generally denying all material allegations of error contained in the petitions.  Respondent's position taken in her answers was the

that it was.[2]  All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Dollar amounts are rounded to the nearest dollar.  Simpson Financial Services, Inc., Richard H. Simpson, and Christine R. Simpson are separately referred to as Simpson Financial, Mr. Simpson, and Mrs. Simpson, respectively.  Mr. Simpson and Mrs. Simpson are collectively referred to as the Simpsons.

## Background

We decide petitioners' motion for an award of administrative and litigation costs on the record of the case, including respondent's objection and the parties' affidavits and exhibits, which are incorporated herein by this reference.  Neither party requested a hearing, and we conclude that one is not necessary.  Rule 232(a)(3).  Simpson Financial's principal place of business was Kenner, Louisiana, when it filed its petition.  The Simpsons are husband and wife.  When they filed their petition, they resided in Kenner, Louisiana.

On February 24, 1993, respondent issued 30-day letters to petitioners, proposing deficiencies in their income taxes.

---

same as that taken in her notices of deficiency.

[2] Based on our holding, we do not decide the other issue in dispute; namely, whether the litigation and administrative costs claimed in petitioners' motion filed Mar. 13, 1996, are reasonable.

Included with these letters were copies of the revenue agent's examination reports (RAR) and waiver forms.

With respect to Simpson Financial, the RAR contained essentially four types of adjustments to its income tax return for 1988. First, the RAR increased Simpson Financial's gross receipts and decreased its cost of goods sold. These adjustments stemmed from what the revenue agent perceived as a misapplication by Simpson Financial of its method of accounting. Second, the RAR decreased, for lack of substantiation, Simpson Financial's claimed expenses for its office, public relations, travel and entertainment, insurance, and depreciation. Third, the RAR disallowed Simpson Financial's claimed net operating loss (NOL) carryforward from its 1987 taxable year. The revenue agent disallowed this loss, due to the revenue agent's determination that there were apparent discrepancies between Simpson Financial's 1987 Federal income tax return and its books and records for 1987. Fourth, the RAR determined that Simpson Financial paid constructive dividends to the Simpsons during the subject year. The RAR issued to the Simpsons reflected the revenue agent's adjustment to their taxable income to reflect the constructive dividends. The RAR's also reflected additions to tax for delinquent filing of returns, negligence, and substantial understatement of tax.

Petitioners did not protest the RAR with respondent's Appeals Division (Appeals). Petitioners requested review of the

RAR relating to Simpson Financial with respondent's examination division.  A revised RAR for Simpson Financial was issued to petitioners on June 28, 1993.  The revised RAR conceded portions of the revenue agent's adjustments to Simpson Financial's gross receipts and cost of goods sold.  The revised RAR stated that Simpson Financial's proposed deficiency was $28,682, rather than $55,844 as reflected on the previous RAR, and the additions to Simpson Financial's tax were proportionately lowered.

Respondent mailed notices of deficiency to petitioners on December 20, 1994, taking into account the adjustments in the revised RAR.  On March 20, 1995, petitioners filed their respective petitions in this Court.  After respondent answered these petitions on April 20, 1995, she transferred the cases to Appeals for settlement consideration.

On April 24, 1995, an Appeals officer mailed a letter to petitioners' counsel suggesting that they discuss the cases on May 17, 1995.  By letter dated May 2, 1995, petitioners' counsel requested a later date.  The parties held a conference on July 25, 1995, and petitioners provided documentation to the Appeals officer, which was in addition to other documentation provided earlier to the revenue agent during her examination. Based upon this new documentation, the Appeals officer wrote petitioners' counsel on July 27, 1995, to settle various issues.

While the cases were still within Appeals, Appeals asked the examination division to audit the NOL reported for Simpson

Financial's 1987 taxable year.  Appeals made this request due to the disallowed loss carryforward from 1987 to 1988.

Settlement negotiations between the parties continued through September 11, 1995, when it became apparent to the parties that they would be unable to reach a mutually agreeable settlement.  Petitioners' counsel sent the Appeals officer a letter requesting the case be transferred back to District Counsel, citing his objection to the Appeals officer's continued demands for additional documentation.  On September 15, 1995, Appeals referred the cases back to District Counsel for trial preparation.

Shortly thereafter, District Counsel was notified by the examination division that Simpson Financial's 1987 Federal income tax return would not be audited.  Petitioners and District Counsel held a conference on December 14, 1995, to discuss the cases in preparation for trial.  At that conference, the parties reviewed various documentation that petitioners provided in response to District Counsel's informal discovery request.  While some of this documentation had been provided earlier by petitioners to respondent either at the audit level or later at the Appeals level, petitioners furnished additional documentation that had not previously been provided to respondent.  The parties settled all issues raised by the notice of deficiency issued to Simpson Financial, including the NOL carryforward, which respondent conceded.  Respondent conceded the NOL issue after the

examination division decided not to audit Simpson Financial's 1987 taxable year.

With respect to the Simpsons' individual return, respondent fully conceded the constructive dividend issue.  Petitioners established to the satisfaction of respondent's counsel that the sums in question were repayments of the Simpsons' loans to Simpson Financial, rather than constructive dividends.  Petitioners had not established this fact at the audit, nor at the Appeals level.

## 1. Motion for Litigation and Administrative Costs:  Overview

In order to recover reasonable administrative and litigation costs under section 7430, petitioners must prove, inter alia, that they were the "prevailing party" within the meaning of section 7430(c)(4), which requires petitioners to establish: (1) That respondent's position was not substantially justified in fact or law, sec. 7430(c)(4)(A)(i); Pierce v. Underwood, 487 U.S. 552, 564-565 (1988); Wilkerson v. United States, 67 F.3d 112, 119 (5th Cir. 1995); Bouterie v. Commissioner, 36 F.3d 1361, 1373 (5th Cir. 1994), revg. T.C. Memo. 1993-510; Han v. Commissioner, T.C. Memo. 1993-386; (2) that they substantially prevailed in the proceeding with respect to the amount in controversy or the most significant issues presented, sec. 7430(c)(4)(A)(ii); and (3) that at the commencement of the proceeding, they met the net worth requirement under section 7430(c)(4)(A)(iii) and 28 U.S.C. sec. 2412(d)(2)(B) (1994).  In addition, petitioners must prove

that they exhausted their administrative remedies within the meaning of section 7430(b)(1);[3] that they did not unreasonably protract the proceedings within the meaning of section 7430(b)(4); and that their claimed costs are reasonable, sec. 7430(c)(1) and (2).  These requirements are in the conjunctive. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).  Petitioners must prove each and every requirement.  Rule 232(e); Welch v. Helvering, 290 U.S. 111, 115 (1933); Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182; Lennox v. Commissioner, 998 F.2d 244, 248 (5th Cir. 1993), revg. in part T.C. Memo. 1992-382; Gantner v. Commissioner, 92 T.C. 192, 197 (1989), affd. 905 F.2d 241 (8th Cir. 1990).

Respondent agrees that petitioners have met all of the above requirements except two.  Respondent disputes petitioners' contention that her position was not substantially justified, and respondent argues that some of petitioners' claimed costs are not reasonable.

## 2. Whether Respondent's Position was Substantially Justified

Whether respondent's position was substantially justified turns on a finding of reasonableness, based on all the facts and circumstances of the case, as well as any legal precedents which may relate thereto.  Wilkerson v. United States, supra at 119; Nalle v. Commissioner, supra at 191; Coastal Petroleum Refiners,

---

[3] This requirement only applies to an award of reasonable litigation costs.  Sec. 7430(b)(1).

Inc. v. Commissioner, 94 T.C. 685, 688-696 (1990).  We ask ourselves, "whether * * * [respondent] knew or should have known that her position was indefensible at the onset".  See Nalle v. Commissioner, supra at 191.  Respondent first took a position in these cases when she issued the subject notices of deficiency.[4] Sec. 7430(c)(7)(B)(ii); see, e.g., Han v. Commissioner, T.C. Memo. 1993-386.

Petitioners allege that respondent's positions were unreasonable as evidenced by the fact that she conceded a large percentage of the deficiencies reflected in the subject notice of deficiencies.  We disagree.  The Government's position can be justified even if ultimately rejected by the Court.  Wilfong v. Commissioner, 991 F.2d 359, 364 (7th Cir. 1993).  The fact that respondent eventually loses or has made substantial concessions is not dispositive in establishing that the positions taken by respondent were unreasonable, Nalle v. Commissioner, supra at 191; Bouterie v. Commissioner, supra at 1367, but is merely one factor to consider; Heasley v. Commissioner, 967 F.2d 116, 120 (5th Cir. 1992), affg. in part and revg. in part T.C. Memo. 1991-189; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sher v. Commissioner, 89 T.C. 79, 84 (1987),

---

[4] A 30-day letter is not the equivalent of a notice of the decision from the IRS Office of Appeals or a notice of deficiency.  Consequently, a 30-day letter does not constitute a position of the United States, for purposes of claiming an award of administrative costs under sec. 7430.  See Estate of Gillespie v. Commissioner, 103 T.C. 395 (1994).

affd. 861 F.2d 131 (5th Cir. 1988).  For petitioners to prevail, respondent's position, as a matter of both fact and law, must not have been "justified to a degree that could satisfy a reasonable person."  Pierce v. Underwood, supra at 565; Wilkerson v. United States, supra at 119.  Whether respondent's position has a reasonable basis in fact and law turns in part on whether there is "substantial evidence" to support it.  Pierce v. Underwood, supra at 564-565; Powers v. Commissioner, 100 T.C. 457, 473 (1993).  Respondent must have at least some relevant evidence sufficient to support her position.

Respondent developed her position in the instant case based on her examination and investigation of petitioners' returns. Cf.  Powers v. Commissioner, supra.  In the notices of deficiency, respondent premised the adjustments primarily on petitioners' failure to substantiate items on their returns. Deductions are a matter of legislative grace, and petitioners bore the burden of establishing their entitlement thereto. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  In addition, section 6001 imposed on petitioners an affirmative duty to maintain books and records sufficient to establish items reported on their returns.  It was reasonable for respondent not to concede the adjustments until she had received and verified adequate substantiation for the items in question.  Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52; Sokol v. Commissioner, 92 T.C. 760, 765 (1989).

Shortly after respondent answered petitioners' petitions, she transferred the cases to Appeals. The Appeals officer met with petitioners' counsel in an effort to settle these cases. The Appeals officer reviewed petitioners' documentation for their claimed deductions and other items and requested additional substantiation from petitioners in order to determine their correct tax liability. Respondent, through her Appeals officer, made changes to her positions and offered settlements regarding those changes based on the documentation petitioners furnished at the Appeals conference; however, the parties could not then reach a mutually acceptable settlement. After these cases were transferred back to District Counsel, respondent's counsel requested additional documentation through informal discovery. Upon review of this additional documentation and a conference between the parties, respondent was able to settle these cases shortly over 1 year after issuing her notices of deficiency and within 11 months of answering petitioners' petition.

Petitioners argue that respondent did not have a reasonable basis in either fact or law primarily because her revenue agent "employed poor audit procedures, made substantial erroneous conclusions of fact and law, made arbitrary adjustments and concocted corruptions of fact and law." Petitioners also argue that respondent's agents did not contact petitioners at various times during the review of their audit or during the interval between the issuance of the revised RAR on June 28, 1993, and the

issuance of the notices of deficiency approximately 1-1/2 years later. Petitioners state that respondent unjustly denied them the opportunity to seek an administrative appeal by not issuing a second 30-day letter after issuing the revised examination report. Petitioners charge that there existed a pattern of harassment against petitioners by respondent's agents, which unreasonably increased the asserted deficiencies and made petitioners' substantiation efforts unduly difficult.

We are not persuaded by petitioners' arguments. Based on our review of the record before us, we find nothing to support petitioners' claims of overreaching and abusive tactics by respondent's agents. To the contrary, our review of the record indicates that respondent expeditiously conceded several issues when petitioners provided convincing evidence concerning the matters in dispute. Although petitioners attempt in their motion to articulate the abuse and overreaching of respondent's agents, such statements are not proof. Rule 143(b); See Niedringhaus v. Commissioner, 99 T.C. 202, 214 n.7 (1992); Viehweg v. Commissioner, 90 T.C. 1248, 1255 (1988); Evans v. Commissioner, 48 T.C. 704, 709 (1967), affd. 413 F.2d 1047 (9th Cir. 1969).

We hold that respondent's positions had a reasonable basis in law and fact. Accordingly, petitioners are not entitled to administrative and litigation costs under section 7430.

To reflect the foregoing,

An appropriate order will be issued denying petitioners' motion for an award of administrative and litigation costs, and decisions will be entered.